Good morning, ladies and gentlemen. We are here for a re-hearing on Bonk in the case of McMonagle v. Meyer. Proceed. Thank you, Your Honor. Charles Bonneau, appearing on behalf of Petitioner and Appellant Brian McMonagle. I would like to reserve five minutes for rebuttal. Your Honors, this case presents issues concerning exhaustion and finality for purposes of federal habeas corpus review following California misdemeanor convictions. I would like to address the exhaustion issue first, since that was the issue raised in the Bonk petition. The State asserts that this Court's 1994 opinion in Larch v. Simmons has been superseded by the United States Supreme Court 1999 decision in O'Sullivan v. Buerkle, and that, therefore, the Larch opinion should be overruled. To the contrary, O'Sullivan v. Buerkle held that a Federal habeas petitioner could not bypass the Illinois State procedure on his way to Federal court merely by claiming that the State Supreme Court review is discretionary. Similarly, in Larch v. Simmons, it was held that a Federal habeas petitioner, following a misdemeanor conviction, could not bypass California's highest court on his way to Federal court, even though the California Supreme Court review in habeas corpus is discretionary, and it is a creation of common law in this situation. So there's no conflict between these cases. They both require me, as petitioner, to go to the State's highest court, regardless of any qualms or quibbles about whether the review is discretionary. We're sitting on Bonk, so we don't necessarily need to determine whether O'Sullivan overruled Larch. We could simply say, let's reconsider Larch. And taking the State's argument that a finality saying, all right, let's say you don't have to exhaust anymore, and then we have a final decision. What's wrong with that? True, but there's no reason to reconsider Larch. There seems to be a missing premise here. The fact is the California procedure has not changed since Larch at all. There was no groundswell of legislative or judicial activism to make it easier for California misdemeanor defendants to make their way to Federal court and to eliminate the step that Larch said we have to make. What would that groundswell have looked like? What are you imagining might have happened? An amendment to California Penal Code section 1473, which governs habeas corpus, would make it clear that the California Supreme Court has no jurisdiction in this area. That didn't occur. In fact, I don't think it was even dreamed of. And so that weighs heavily in favor of reinforcing Larch. There is a familiar maxim of statutory construction that stare decisis weighs heavily in favor of a judicial interpretation once announced, since a State legislature always has the power to change the law from what the Court has construed it to be. Well, Larch was pre-AEDPA, so that's a consideration. I mean, the Larch panel didn't have the 1-year statute of limitations sitting in front of it when it decided that case, so they didn't really consider the issues involved in this one, right? So as a practical matter, though, if we were to say that the round, one full round of the appellate review that misdemeanors are entitled to in California does not include the habeas proceeding before the California Supreme Court and a year of the 1-year SOL would start when that proceeding became final, the appellate proceeding became final. How is your client hurt if the period during which the petitioner is pursuing his habeas claim before the California Supreme Court is told under AEDPA? I'm sorry. How is – how are we harmed? Well, you don't lose any time, right? I mean, is there an actual conflict between the ability for the petitioner to pursue a Federal habeas petition if he's also required to exhaust under Larch before the California Supreme Court on habeas? Yes. There's a potential problem here, and I was going to get into that with the finality. That's my question. Yeah, okay. If the finality clock begins with the denial of transfer to the court of appeal, and so if we are then required to file a cert petition within 90 days, simultaneously to achieve exhaustion, we have to file in the California Supreme Court within an undetermined period of time, but subject to the California Supreme Court. What if we change that? What if we say Larch is wrong and you don't have to do that and exhaustion is complete when the transfer is denied? Then what's the problem with that? Well, we'd still have to – okay, well, that's the potential problem. Then you're untimely, right? Beg your pardon? Then you're untimely. Then we could be untimely, yes. So for your client now, you might have a problem, and we could talk about whether you would perhaps get equitable tolling. But as a general rule, is there any problem with the idea that exhaustion and finality could line up at the time when transfer is denied? Could line up. If we got rid of Larch, would there be any problem for misdemeanor defendants like your client? Well, your client would be, unless we applied equitable tolling, your client would be time barred, but other people similarly situated in the future would not. Isn't that the answer? Yeah, that's the answer for me. Wait, wait. Just one follow-up question. However, we do have a series of cases, and Ned's among others, Harris, that say when there's a change of law and you rely on the old law in the Ninth Circuit in pursuing your habeas remedies, then you're entitled to tolling. I assume that you would rely on that. I would give you a pass. We could give you a pass on that, on your client. But this ruling that we have would move the process along by more than a year for the rest of the people and save the State of California a lot of money because they wouldn't have to send out thousands of postcards and pay the postage on it. So, you know, it's got a lot of benefits. Well, can I answer Judge Pregerson's? Actually, I think there is a substantial State interest involved here, which under principles of comedy should be respected. I only have one client, and that's Mr. Belmodigal. And if we get a pass for him, I'm happy, of course. Well, the legal argument's pretty good if you get a pass. Yeah. So if I guess what you're saying, or making the ruling perspective, if we were to now hold that Larch v. Simons has been superseded by O'Sullivan, then you would argue that McMoneagle is entitled to some relief because you relied on Larch? Yes, yes. Okay, but can I? No. It's my turn. I'm going to ask this question because I don't think you fully thought the habeas claim through. The habeas claim. Sometimes, for example, when someone – so you have the California direct review process that, you know, we may be inclined to say that's final. And then we have habeas claims. And many times the claims on habeas are not the same – I'm thinking of ineffective assistance of counsel – as those on direct review. So if you filed a petition, a federal habeas petition, that had your direct review claims plus added ineffective assistance of counsel claims, our federal courts would say, well, you haven't exhausted those claims because you haven't had a California state court review the ineffective assistance of counsel claims. Correct. So there is a category of claims that would still be unexhausted, right? Well, if it were a collateral claim, yes. Well, what is habeas? What is habeas? It's a collateral claim. This is a hybrid. And it's arisen – and going back to the question that Judge Pregerson had, there's a specific reason that this happened. In the decades ago, there were issues all over the United States having to do with labor unrest, First Amendment problems, supermarkets, demonstrations, where does the constitutional line fall. In many of those, almost all of those cases were decided through municipal courts and appeals to appellate departments. Now, in 1942, the California Supreme Court said, we cannot let this elude, these have to have a mechanism. Even though it's not in the statute, we have to allow people to come before the highest state court in habeas corpus, somehow in habeas corpus. Now, they contemplated direct review. So it's not – we're not talking about ineffective assistance of counsel or other kinds of collateral review. We're talking about direct review. And the United States Supreme Court in 1952 in Edelman used that path. It sets it out. It's a blueprint for what I followed for Mr. McMonigle. All the steps are there. And it cites Ex parte Bell for the purpose of exhausting and preserving a Federal constitutional claim for Federal court review. So it endorses that. And California has actually lived under this for many years, even before large. On your direct review through the appellate court, do you raise ineffective assistance of counsel claims there? No. We've never raised ineffective assistance of counsel. Do you do it on habeas before the California Supreme Court? No. We've only raised confrontation. That's our issue here. But, counsel, that's the problem, right? I have the very same problem Judge Wardlaw has. So I just want to take you back to her issue. In earlier questioning here today, we've talked to you about if large is overruled and if your client has an equitable tolling, then your client would be fine. Because in that situation where the claim is a confrontation clause claim, finality and exhaustion, both going to be achieved at the same level of California court, absent large. Yes. But Judge Wardlaw's positing is the same question I have, which is if the claim isn't a confrontation clause claim, but is instead a claim like ineffective assistance of counsel that's not exhausted, you see, on direct appeal, then it's a different paradigm. The California courts and Federal courts are very accustomed to drawing that distinction. We have to raise generally, ineffective assistance of counsel generally is a collateral issue and has to be raised in habeas corpus. Sometimes it can be raised directly. And the California courts are accustomed to making that distinction. Yes, but it's the litigants I'm concerned about. I'm concerned about them being on notice about when they have achieved finality and exhaustion. And it would seem odd to me, and I'm troubled by the notion that it would be a different set of rules depending on the type of claim presented. Because that's tough for the litigant to be able to correctly predict. Well, we've gotten used to it. It's been this way for a long time. Collateral claims are more difficult to develop. They often involve DNA or going tracking down a witness or something. We know. We see them a lot. And direct review is a matter of days or weeks to redraft the documents and file them. What about the pro se litigant? I fully appreciate the bar may be used to this, but what about the pro se litigant? Should we be concerned about the notice problem that I think Judge Wardlaw is raising? Well, unfortunately, the pro se litigant is already up to his neck in rules and ways to lose his claim. I don't think that it's safe territory for the pro se. And adding another rule is just going to be another obstacle of many. Am I understanding correctly that you're saying to exhaust an ineffective assistance of counsel claim, you always have to bring a collateral claim? This issue of when your direct appeal is done doesn't change that or affect that or make that any more complicated than it already is? Or is there some other nuance? Well, we don't refer to this as a collateral claim. And the panel decision did not refer to it. No, no. But if it were, imagine you also had an ineffective assistance of counsel claim that would be a collateral claim. Would changing the rule for when the Confrontation Clause claim was exhausted make your ineffective assistance of counsel claim any harder or less hard to deal with? Usually we're on separate tracks. And that would be true anyway. That's always true. And changing the first track for the Confrontation Clause, would it in any way make the other track more complicated? Wouldn't affect it. We have to make those distinctions. And each claim works its way through on its own timetable. In fact, if it's — if we miss a deadline for one claim, we may have to amend it out of the Federal petition. Did I understand you to say, Mr. Bonner, that you don't regard your habeas claim as a collateral claim? That's correct. Well, isn't that exactly the problem? I mean, your direct review was done when the California Court of Appeal declined to transfer and your time to go to the Supreme Court expired. Well, a collateral claim by definition has to be something that's coming from the side or outside of the record that we have. And this isn't. This is a direct — This is a direct review claim. And the time for that expires when your direct appeal runs out, when you get to the end of the road on your direct appeal. Not according to Ex Parte Bell and not according to Larch v. Simmons. But the more fundamental law is Bell and the longstanding California rule that an important Federal constitutional claim has to be presented to the State Supreme Court. The State Supreme Court has to have that discretion over its own court system and its own policing of constitutional rights in California. But where does all that get you in the real world? What does it get you in the real world? Well — We have all these complexities out there. They're out there partly to frustrate habeas Petitioners. We've got a whole obstacle course out there. Now, this seems to remove one. I mean, how many of these habeas petitions does the Supreme Court of California grant in a year? I don't know, but I certainly agree that it is seldom. Rarely, rarely. Rarely. I had one granted last year. I know. So you're an expert now. That's great. It's — in terms — I guess I — philosophically, I could debate this, but I represent one client here, Mr. McMonigle. We followed the rules, and we don't want to see the rule changed after the fact. But if you followed the rules — I mean, that's exactly why you'd have an equitable tolling argument, right? You followed the rules as you thought they existed at the time, and if we change them now, then that's why we have equitable tolling to deal with that type of situation. I mean, if we posit that you would get equitable tolling, and I understand you might not want to count on that, but if you did get equitable tolling, does this matter at all to your client? Well, of course it doesn't. And would it matter to any other client in the future? It would be easier in the future, but I can't — I don't have a crystal ball, so I'm not giving up that line of defense since I don't know what the court is going to rule. You're also making this argument that the California Supreme Court has an interest in hearing these constitutional claims, but couldn't the California Supreme Court deal with that by telling the court of appeal to grant transfer on constitutional claims that have some potential merit? They do. They have. But if it's an important issue, the California Supreme Court may and has stated that they wish to retain that jurisdiction. But they can deal with that within the state system. If they want that, they can say grant transfer in every constitutional claim or grant transfer in every — however they define the category. That's something they can deal with on their own within their own system, right? That has to do with direct review anyway. They have that problem anyway, regardless of whether we — whatever we do about federal habeas. If they want to hear those claims, that's something they need to work out anyway. Well, there's a — they only have so many tools in their toolbox. And the only one I — that they've come up with and the only one I know of is habeas corpus to ensure that the California Supreme Court can look at important constitutional claims that come out of a misdemeanor or municipal court jurisdiction originally. And I think that's an important principle. It's potentially — it looks — if you look back at it, it kind of looks like a constitutional crisis in California that could have been emerging because some forces wanted to bottle up these constitutional claims so that they couldn't be heard, so that they could be cut off easily and not heard. And the California Supreme Court said no. That's never been confronted by the legislature. And so it's been impliedly endorsed for, I guess, 65 years now. And so it's just a dormant crisis that we — I don't think that we want to poke the tiger. The — if I may, there was an additional issue having to do with — that arose in the dissent in the panel below, which would not have overruled Large v. Simmons, but rather would have given us two sets of time limits to work with, one for exhaustion and one for finality. That is problematic for a couple of reasons. Obviously, it's more complex, but it also raises the possibility that you could have concurrent jurisdiction. I might have to file my cert petition. I would have to file it within 90 days under this rule, and I can't sit and assume that the California timeliness rule is going to wait for me. I never know that. I just need to file it as soon as I can. So under that scenario, where Large v. Simmons isn't overruled but we have two clocks running, then we're going to have petitions in the United States Supreme Court and in the U.S. District — I mean, in the California Supreme Court and the United States Supreme Court, both at the same time. So it's actually more orderly to overrule Large? I mean, but for your client. I mean, if your client were to get tolling because it's a change in the law, it's more orderly for the process. Well, it has that virtue, but it cuts the California Supreme Court out of the game, out of the loop. But isn't that really a decision already made by the legislature in how they put together the rules? They have not attempted to rob the California Supreme Court of habeas jurisdiction in this area, which the Supreme Court said we must have. But they can still have that. They can still have habeas jurisdiction and consider the claims they want to consider. But if they call it habeas jurisdiction, then it's not part of direct appeal, and EDPA triggers when EDPA triggers for Federal purposes. It doesn't mess up California to, for EDPA purposes, to consider finality and exhaustion to both be done when transfer is denied, right? The problem is that the Federal statutes actually — they use different words, but I'll just quote them. 28 U.S.C. 2254 says, sub C, no exhaustion, quote, And that's for exhaustion purposes. For finality purposes, we're governed by — because this circuit has said that finality is governed by your cert petition, and that's governed by 28 U.S.C. section 1257, certiorari review is limited to final judgments, quote, rendered by the highest court of a State in which a decision could be had. And if — and if, unquote, and if the habeas jurisdiction is lying there, then it would — it would tell me that I had to do that before I — and get a — before I can go to the United States Supreme Court. That's — I haven't seen any resolution of that conundrum. These two statutes, even though they're worded differently, appear to refer to an identical set of procedures in this context. But so if we clarify that for both purposes you only need to have transfer denied to have your claim exhausted and be final, what's the problem? The problem I would be afraid of is that the United States Supreme Court may disagree with this court about — Well, so then they would clarify. I'm sure we will hear — we'll hear from them if they disagree. Well, but that might be too late for my client. Well, no, because that's what — Well, but then you'd be back in the situation here, sort of an equitable tolling reliance on the law. I mean, let's take your client out of the situation and say hypothetically that your client gets tolling and therefore gets the relief in order to be able to get into federal court and kick off the process. But wipe the slate clean without your client. And I haven't really heard a good reason why the finality rule, at least as envisioned by the California statutes, shouldn't be the kickoff point in misdemeanors for filing a federal habeas. Well, the reason is that we still have a remedy. And according to both the habeas statutes and the cert statute, we have to use it before — and be denied before we move forward. But you have a final judgment. It just — it's the same in terms of let's take a federal habeas person. He has a final judgment, but he still has some other possible remedies on collateral review, so it doesn't mean there aren't other possible remedies. And so why isn't the California habeas in some ways kind of similar to the federal person who says, well, I have a final judgment in district court, but I also have the possibility of additional review on collateral attack? Well, it's — to me, it sounds like someone who wants their cake and eat it, too. And because as long as I have this other remedy, and until the U.S. Supreme Court tells me otherwise, I have to use it. And I have to — and I have to get — I have to file and get a ruling on it. You don't have to use it for finality purposes, do you? According to finality, for cert review, it's limited to final judgments rendered by the highest court of a State in which a decision could be had. And as long as the California Supreme Court says that we can get a decision from them and that we have to — or that — well, as long as it's available, that's the only question. And it is. Do you have any cases where the Supreme Court has actually denied cert, saying, no, you have to go to the California Supreme Court and exercise your available remedy there in habeas first? Well, there's untold numbers of cert denials. There may be one hidden there someplace. But Edelman certainly validated the procedure that we've followed with all the same steps, including the habeas corpus, to the California Supreme Court. I'm just saying I don't — I'm not sure that this — that your interpretation of the cert statute is necessarily the same as the Supreme Court's interpretation of the cert statute. I don't — I don't think anyone knows for sure, but they have applied it. And in view of — as long as Larch is the law, we have to assume that this is a remedy that's available. And indeed, as long as Bell is law — and I don't see that changing. The California Supreme Court wants to be able to police these lower courts, the ones that are under the radar, and to be able to give us review as long as we move timely and go through all of the direct review processes and present that claim to the California Supreme Court. They want — they want that jurisdiction. They've never said — they've never said otherwise. Thank you, counsel. Thank you. May it please the Court. Brian Smiley from the Attorney General's Office representing the Warden. This case, in my mind, and you've been touching on it a lot, it boils down to the difference between direct review claims and collateral review claims. And I'm not sure if I made it clear in my brief, but I actually think that a misdemeanant in McMonigle's shoes would have an available remedy in habeas if he had a collateral attack to make on the judgment. The difference here, though, is that McMonigle's only claim is a Crawford claim. It's a direct review claim. And California — the California Supreme Court does not want to see those kind of direct appeal claims. But they can. Why not? No, but they can. Well, let's take a situation, counsel, where setting assignments to McMonigle where someone has a mixed petition, let's say that a petitioner like Mr. McMonigle has a constitutional claim, but also wants to argue that his counsel was, let's say, ineffective for failing to call the witness at the scene who can testify to his stellar performance during the field sobriety test. Take me through that case. How will it proceed in the State court? Well, in State court, he should raise his direct review claims. So any claims that are, you know, that would normally get plenary review, error correction, claims regarding the admissibility of evidence, sufficiency of evidence, Fourth Amendment claims, these are all direct review claims. And so he would present that to the Appellate Department of the Superior Court in California. If they deny relief, then he seeks certification to the California Court of Appeal. If they deny it, then he can apply for a transfer to the California Court of Appeal. And if they exercise discretionary review, if they then say, no, thanks, we don't want to see this, then with respect to his direct review claims, he has exhausted his State remedies. And the finality of that direct review would occur 90 days later when the time for filing a certiorari petition would expire, or if he files one when that's due. All right. Take me through his ineffective assistance of counsel claim. Exactly. So you said that he's also got an ineffective assistance of counsel claim. In California, you don't have to raise those on habeas, but they're strongly encouraged to be raised on habeas. So what you need to do to exhaust that claim, because those tend to go to extra record evidence, you need to bring that to the California Supreme Court on habeas. And Ms. Ena can't do that. But you can bring it to any California court on habeas, can't you? Say that again. A California habeas could be the Superior Court, Court of Appeal, or the Supreme Court, right? They all have original jurisdiction, as you know. Right. So you can go straight to the California Supreme Court if you wish, or you can go to the Superior Court, DCA. You can go to all three in any order, which is another problem with the statute. But to Judge Wynn's point, which is the one Judge Wardlaw was raising earlier, I think, it is a little bit tricky because one of those claims is not going to achieve finality, exhaustion at the same time, right? It is tricky, yes. The only defense I have for that is just that the distinction between direct and And I think in my research, it looked like the Federal writ has sort of paralleled or California has sort of paralleled the Federal writ. Originally, habeas was just limited to jurisdictional challenges. And then gradually it kind of got to claims that were in excess of jurisdiction. And the Court started to really sort of create a fiction about what is jurisdictional. And then eventually it became much broader than that. So now that we have claims, such as claims that really couldn't be fairly raised on appeal, that need to go outside the four corners of the appellate record, like an IAC claim, jury misconduct, Brady claims oftentimes, things that couldn't be discovered during the time of your trial, those would be habeas claims. So also claims in California that are permitted are claims that challenge the constitutionality of an ordinance or statute. And that's what in the Bell case that my opposing counsel was talking about, that's what was going on there. They were deciding whether or not they could hear that on habeas. And they said, well, because they're challenging an ordinance, the constitutionality of it, it's sort of a fundamental constitutional error. We will accept that on habeas. It's just the more routine, ordinary error correction type of claims that are not permitted on direct review. Roberts. Except the problem is, if Larch is correct in his rendition of California law, that in fact in this peculiar circumstance the California Supreme Court can entertain what would normally be a direct review claim via habeas, right? No. You know, I went back and looked at Larch carefully. We don't know what the claims in Larch were. Right. We can't tell if they were collateral or direct. Let me ask you this, then. Do you think that the California Supreme Court could allow a habeas review of Mr. McGonigal's case? Could they have granted his petition for habeas review of this? Not if they're following the rule, no. They didn't say why they denied it. They just denied it. No, they just said the petition for the habeas corpus is denied. So we don't know whether they would under any circumstances entertain this or not. But Larch presumed that they would. It said the California Constitution provides that. You know, interestingly, in Larch they cited two cases as examples of the California Supreme Court entertaining misdemeanor cases. Both of those are habeas cases. They're not direct review cases. Well, they have to be habeas, though. What? I mean, that's the only way he could have raised his claim is by habeas, his direct claim with the California Supreme Court, right? But I'm saying I agree that California Supreme Court will entertain those habeas petitions. But Larch's example of those two habeas cases doesn't indicate at all that the California Supreme Court is willing to entertain direct appeal claims. Right. Let's presume for the sake of argument that Mr. McGonigal files his claim and the California Supreme Court decides to entertain it, just as he did in this case. Instead of denying it, they grant it and they review it. Do you think they're within their power to do that? I think your premise is wrong, because I don't think the California Supreme Court entertained this habeas petition. We don't know. Well, they denied it. They said the petition for the habeas corpus is denied. Yeah. What can you infer from that? Well, normally under Richter we infer that's a new jurisdiction under the merits. But what is – Richter specifically says that in the absence of any indication or State procedural principles to the contrary. That's exactly what we have here. We have State procedural principles to the contrary. The rules of court in California say California Supreme Court does not want those direct appeal claims. So you're saying there is absolutely no way that you can get direct appeal of a misdemeanor under these circumstances with the California Supreme Court? You know, the California Supreme Court could go ahead and reach it. We don't know. I mean, they come out with the postcard denials, Judge Prager said, but we don't know why they did that. And this is familiar territory to all of you when you're trying to decipher what the California Supreme Court meant in an unexplained order. Well, they want to get rid of the case. That's why they do it. But we don't know why they want to get rid of it, is my point. They don't want to handle them. That's why they're busy with other things. And I'm not quibbling with your general premise, but I'm just saying that if there is discretionary review allowed, and we accept your theory that Larch should be overruled, there is a possibility you have a Federal habeas petition going on at the same time that there is a discretionary review with the California Supreme Court. That's a possibility. Because they could grant, they could deny. Well, but the principle since Rose v. Lundy is always that you're supposed to finish in State court before you get to Federal court. And that's very common for a felon to be appealing their case. They get done with their appeal. Then they seek habeas. Right. As Judge Wardlaw said, they get tolling for the time that their habeas is pending. So Congress is allotted for that procedure, even though finality has occurred once the direct review claims are exhausted. So the clock begins to run at that point, but it gets tolled the whole time they're properly filing State habeas. So go ahead. Are you saying, so in your interpretation that the California Supreme Court really couldn't have granted review here, should we conceive of that as the California Supreme Court has essentially given the California court of appeal its discretionary review decision in some sense, because the question of whether this constitutional claim is important enough for them to consider is determined at the time that Trooper is denied? They have said that. The California Supreme Court has said these, they basically have said that misdemeanors involve a degree of seriousness that's not that important to us, and we're inundated with lots of other important cases. And so for this category of direct appeal claims, we would choose not to have them. But it still could get to them if transfer is granted, right? It could, absolutely. And so if the California courts think this is an important enough issue that it needs to be considered at higher levels, then the court of appeal has that job to grant transfer, and then it can go to the California Supreme Court. Precisely. What do you do with 1257? And he poses a problem about, well, when is finality for cert purposes if you have the language that says the highest court of a State in which a decision could be had? He interprets that to be the California Supreme Court. So he had to go to the California Supreme Court. How does this figure in, section 1257, with your premise? It begs the question, what is the highest State court in which a decision could be had? Is the interpretation that in the case of a misdemeanor in which the certification has been denied, the highest State court is in effect then the court of appeals? Correct. That's the highest decision in which it could be had. Okay. Do we have any cases that say that, or would we be treading new ground to adopt that? I mean, yes, there are cases. There was a case I think just last year from the California Supreme Court where they acknowledged Rule 8.500a1, it's called STEEN, S-T-E-E-N, and they acknowledged the fact that we don't hear appeals on these misdemeanor cases where the transfer has been denied by the California Supreme Court. No, I understand that. And we can see that from the statute. They don't specifically know. So what I'm asking, has there been a decision under 1257 that your cert petition is either too early or too late because of how you interpret the highest court in which a decision could be reached? Well, as I cite in my rehearing brief, there's several cases where the highest court in which a decision could be had can be the trial court in a State, the intermediate appellate court, and this is just another example of that. I don't know if I'm answering your question. It's just, to me, deciding. Well, I guess maybe more precisely, we don't have a case in which this misdemeanor situation has been fed through 1257 to come out with a determination that the Court of Appeal is the highest court in this situation, the misdemeanor situation. I don't know the answer to that. Okay. If we were to hold that Larch v. Simons has been superseded by O'Sullivan, and you went on that, do you have a problem with, since we've talked for almost an hour now on how clear all of this is, if you were to went on that, do you have a problem that Mr. McMonigle would get some equitable relief because it's so confusing? Great, I do. And the reason is this. To get equitable tolling, I know in Harris v. Carter, the Court held that when a petitioner relies in good faith on what's a valid rule at the time and then later on it gets overruled or something happens, that can be an extraordinary circumstance in terms of equitable tolling. And the problem here in this case is that when the California Supreme Court denied McMonigle's petition on June 17, 2010, McMonigle didn't file his federal petition until August 10, 2011, over 400 days later. That's not diligent. So you can't get equitable tolling. I think McMonigle's out of luck. Well, except if he argues that he got a cert petition right after that. He did not file a cert petition. Yeah. But the period for filing cert hadn't run yet. So he gets plus 90. He gets 90 more days. Well, but diligence has to run. For equitable tolling, diligence has to be throughout all proceedings. If you look at the way that it's applied by Pace, by the U.S. Supreme Court, they faulted the petitioner in Pace for delay that he committed before there was a statute of limitations in the early 1990s. Right. So you have a problem with everything. I do. All right. But that being said, do you have less of a problem with that than losing on the legal issues of Larch and O'Sullivan? Can I take the fifth? Let me ask you a different tolling question. I mean, it's hard to discern. I mean, California habeas law is the most confusing in our circuit, but, you know, without a question. And it's hard to discern sometimes what the California Supreme Court is going to entertain and not entertain. Would you agree with the rule, assuming we get rid of Larch, that if a misdemeanor defendant chose to exercise discretionary review or seek discretionary review with the California Supreme Court, that that period would be told? For a directive bill claim, no. It's not permitted. You say it's not permitted, but we don't know if it is or not. That's my difficulty. You do know. Rule 8.500A1 specifically says it is not permitted. You cannot seek review in the California Supreme Court if you have just direct review claims if you're a misdemeanant, like when you deny transgression. Is there a statement from the California Supreme Court as clear as that quoted by He quotes from the Supreme Court of South Carolina saying, it's final, don't come to us. Is there a California equivalent to that? I think Rule 8.500A1 is the operative rule here. It doesn't specifically say exhaustion for purposes of federal habeas. I noticed in this Court, when this Court ruled in Swoops v. Sublette in Arizona's procedure, Arizona had actually said, you know, for purposes of federal habeas, exhaustion is completed at this point. And California just doesn't get that specific mentioning exhaustion principle. Isn't that the problem? Somebody, a litigant who raises a constitutional claim, in this case, it's not a claim unique to a misdemeanor defendant. It's the kind of claim that could be raised by any defendant. It could come up in a felony case easily enough. We get it in felony cases. And so a defendant who says, who looks at Larch and says, well, I've got to keep jumping through hoops, what's illogical about that? You've argued, too, as the California Supreme Court can't do it, and yet when Chief Justice Thomas asked you if there's anything that where the California Supreme Court says, sorry, we can't, there's nothing. There's a void. I mean, there isn't a statement like the South Carolina Supreme Court that says, nope, don't come to us, we can't do it. You're pointing to the fact that you're not so you don't – because the rule specifically, so you're saying a statement from the California Supreme Court? Well, you're trying to tell us, in effect, that he would be wasting his time. Indeed, he was wasting his time when he went to the California Supreme Court. The postcard denial just said deny, didn't say you're wasting your time. We can't do it even if we wanted to. So why is it we should assume that denial stands for we couldn't do it even if we wanted to? Because you have to just – this is the typical situation where you're trying to infer what a silent order meant. And we have these state procedural principles which are to the contrary of presuming it's a merits adjudication. Well, counsel, so I don't think a question about exhaustion under AEDPA would be appropriate for the California Supreme Court. But I'm thinking about what if we were to certify the question of whether under these circumstances the California Supreme Court has delegated its final – its station, its position as the court of last resort to the court of appeals, i.e., that it will not exercise jurisdiction under – over a misdemeanor's direct appeal. You could certainly do that. I mean, they're not always receptive to those certifications, but absolutely you could do that. Now, if they took it, that would provide clarification further. But I think Rule 8.500A1 is pretty clear. They do not want to see direct appeal claims for misdemeanors when transfers have been denied from the court of appeal. It would be nice to have them say that. And actually, well, as I said, in that Steen case just last year, they refer to the rule. I mean, they acknowledge it. Well, a vast majority of these petitions are filed by state prisoners in pro per, right? Yes. And they're supposed to know all these rules? It's difficult. Difficult? Difficult. It's impossible. Well, and here we have Larch, which says, A, there is a remedy, and B, you have to pursue it. That's what Larch says. And you disagree with Larch's premise. But that's what – I mean, if you are in Mr. McGonigal's shoes looking at the law, it's reasonable to follow that, isn't it? Well, as I say, that's an equitable tolling question, whether or not equity dictates that his petition should not be dismissed as untimely. Any further questions? You know, a good answer to this problem is to have public defenders in all the state prisons counsel these prisoners. Probably lessen the flow of work to all the courts. Thank you, Counsel. Thank you. Go ahead, Rebuttal. Thank you. I'd like to second that proposal that there be counsel at these initial stages so that we don't have so many people falling through the cracks. Thank you. The – our petition to the California Supreme Court was properly filed. We got a simple denial, which is standard operating procedure. The California Supreme Court could have indicated by a simple citation if this was improperly filed. It could have rejected it for filing. It did nothing like that. There's every indication that it was indeed properly filed. Why were you diligent? In terms of the – When I asked counsel for the government saying, you know, if let's say you went on all the legal issues, but we say that this – it wasn't the law was confusing or this is a change of the law, we're stating it clearly now, but he says you still lose because you weren't diligent. If I'm in a corner where I have to make a case for equitable tolling, I would point to the existing law, which allows me – it was within an existing time limit, according to Larch. Is there any reason why it took 14 months between the denial from the California Supreme Court and the filing of the federal habeas? Our timing was governed by the decision in Bull Cumming versus New Mexico. The – we have to, in order to go to federal court, we have to have a controlling United States Supreme Court decision. If Bull Cumming had come out two months earlier, we would be within – we would have filed promptly and we would, as we did, and we would be within the statute of limitations by any calculation. If it had come out two months later, we would have been out of luck and our time limit would have passed. So we acted, I think, within a few – six or seven days, I think. It was a few days of the Bull Cumming decision. And since we were within our Larch time limit, that was – I would submit that's diligence. Thank you, counsel. And before we leave today, I understand, Judge Pregerson, you celebrated your 50th year on the bench last week. Is that right? That's right. And we are at the conclusion of our en banc week, so let's give Judge Pregerson a round of applause. Thank you. I feel like I got here yesterday. Thank you. I will be in recess.
judges: Thomas, Pregerson, Silverman, McKeown, Wardlaw, Clifton, Callahan, Smith, Christen, Nguyen, Friedland